UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

DANIEL DUVIELLA,

                Plaintiff,

   -against-

JETBLUE AIRWAYS CORPORATION,

                Defendant.
----------------------------------------------------------X

MEMORANDUM AND ORDER
04-CV-5063 (NGG) (LB)

NICHOLAS G. GARAUFIS, United States District Judge.

     Plaintiff Daniel Duviella brings this action against Defendant JetBlue Airways Corporation, claiming that JetBlue failed to promote him and later discharged him because he is African-American and over the age of forty, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, New York State Executive Law § 296 *et seq.*, and City of New York Administrative Code § 8-107 *et seq.* (Amended Complaint ("Am. Compl.") (Docket Entry # 15) ¶¶ 1, 29-39.)[1] For the following reasons, JetBlue's motion for summary judgment is GRANTED.

**I.    Standard of Review**

     A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such

---

[1] In his Amended Complaint, Duviella also alleges that JetBlue wrongfully retaliated against him for complaining about JetBlue's failure to promote him. (Am. Compl. ¶ 40-45.) Duviella has since withdrawn his retaliation claim. (Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket Entry # 44) at 1.)

issue warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## II. Duviella's Termination Claims

The court's review of Duviella's termination claims under the ADEA and Title VII follows the McDonnell Douglas burden-shifting inquiry.[2] See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that test, Duviella must first establish a *prima facie* case of discrimination by demonstrating that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he was discharged; and (4) his discharge occurred under circumstances giving rise to an inference of discrimination. Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000) (Title VII); Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001) (ADEA). If Duviella establishes a *prima facie* case, the burden shifts to JetBlue to produce a legitimate, non-discriminatory reason for his discharge. If JetBlue satisfies this burden, the burden shifts back to Duviella to demonstrate that JetBlue's stated reason is in fact a pretext for discrimination. Cruz, 202 F.3d at 567. It is not enough for Duviella merely to create

---

[2] The standard applied to claims brought under the New York State and New York City human rights laws parallels that applied to Title VII claims. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000). Duviella's New York State and New York City human rights law claims for wrongful discharge and wrongful failure-to-promote will therefore not be considered separately from his Title VII and ADEA claims.

doubt that JetBlue's stated reason was the real reason for discharging him. He must also put forth "evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination" on the basis of his age or race. Grady v. Affiliated Cent., Inc., 130 F.3d 553, 561 (2d Cir. 1997).

    A.        Duviella's *Prima Facie* Case

Duviella is clearly a member of a protected class both under the ADEA and Title VII, because he is African-American, see 42 U.S.C. § 2000e-2(a), and because he was more than forty years old when he was discharged, see Grady, 130 F.3d at 559; Am. Compl. ¶ 6. Moreover, JetBlue does not dispute that Duviella was qualified to be a customer service "lead," his position at JetBlue, nor that he was discharged. (See Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment ("Def. Mem.") (Docket Entry # 39) at 6.)

JetBlue argues, however, that Duviella has not shown that his discharge occurred under circumstances giving rise to an inference of discrimination. (Id.) JetBlue contends that it properly terminated Duviella after it determined that he had violated its policy against sexual harassment in the workplace. (Id.) Duviella responds that the manner in which the investigation leading to his termination was conducted and JetBlue's disproportionate response to the results of the investigation create an inference of discrimination sufficient to meet his initial burden under McDonnell Douglas. (Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem.") (Docket Entry # 44) at 14.) Because Duviella's arguments that his discharge occurred under circumstances giving rise to an inference of discrimination are the same as the arguments he puts forth to show that JetBlue's stated reason for his discharge was pretextual, the court will assume *arguendo* that Duviella has met his initial burden.

3

B. JetBlue's Legitimate, Non-Discriminatory Reason for Discharging Duviella

JetBlue claims that it dismissed Duviella for a legitimate, non-discriminatory reason: After a thorough investigation, it concluded that he had violated JetBlue's policy against sexual harassment in the workplace. (Def. Mem. at 6.)

On October 8, 2003, Patricia Lopez, a manager at JetBlue, heard of a complaint by Ismenia Salcedo, a JetBlue crew member, that Duviella sexually harassed her. (Lopez Deposition[3] ("Lopez Dep.") at 10, 56.) For advice on how to handle the situation, Lopez called JetBlue's "People Department," which recommended that Duviella be suspended pending an investigation. (Id. at 56.) That same day, Duviella was suspended. (Jose Requena's Notes of Duviella Interview, Declaration of Christie Del Rey-Cone, Esq. ("Rey-Cone Decl.") (Docket Entry # 40), Exh. M.)

On October 9, 2003, Jose Requena, a corporate security officer at JetBlue, began an investigation into Salcedo's complaint against Duviella. (Requena Deposition ("Requena Dep.") at 34-35.) In an interview with Requena on October 15, 2003, Salcedo stated that on October 8, 2003, at approximately 12:10 p.m., Duviella called her into Customer Service Supervisor Jose Pichardo's office. Ricardo Cilindrello, a customer service lead, was in the office working on a computer. Duviella locked the door, told Salcedo that "there were too many nosy people out there" and placed Salcedo's hand on Cilindrello's shoulder. Salcedo told Duviella to stop because she knew that Cilindrello's girlfriend was outside and Salcedo didn't want any trouble. Despite Salcedo's protest, Duviella again took her hand and put it on Cilindrello's shoulder.

---

[3] Deposition transcripts are attached to the Declaration of Christie Del Rey-Cone, Esq. (Docket Entry # 40) and the Declaration of Jason M. Wolf, Esq. (Docket Entry # 46).

4

Salcedo tried to leave the office, but Duviella grabbed her from behind the waist and held her against her will. While Salcedo was trying to free herself, Duviella grabbed her buttock. Salcedo then left the office and reported the incident to her supervisor. Salcedo told Requena that, prior to this incident, Duviella once told her that she "was getting cuter and cuter every day" and once asked her if her breasts were real. (Requena's Notes of Salcedo Interview, Rey-Cone Decl. Exh. L.)

Cilindrello provided a statement to Requena in which Cilindrello stated that he was in the office when Salcedo and Duviella entered. Cilindrello was working on the computer and turned around only when he felt Salcedo's hand on his shoulder. All Cilindrello heard was giggling and laughing; he couldn't corroborate Salcedo's claim that Duviella restrained her or grabbed her buttock. (Requena's Notes of Cilindrello Interview, Rey-Cone Decl. Exh. N.)

During Requena's investigation of Salcedo's complaint, Christina Rodriguez, a JetBlue customer service agent, told Requena that on September 27, 2003, while she was waiting for a flight with Duviella and Clinton Cato, another JetBlue customer service agent, Duviella made certain comments of a sexual nature to her, including that he was a "swinger." Then, Duviella stood in front of her, said "You want to see, you want to see," reached into his pants, and tried to show Rodriguez his penis. After this incident, Duviella at one point told Rodriguez that she "had a nice ass." (Requena's Notes of Rodriguez Interview, Rey-Cone Decl. Exh. O.) Clinton Cato met with Requena and corroborated Rodriguez's story that Duviella tried to expose himself to Rodriguez. (Requena's Notes of Cato Interview, Rey-Cone Decl. Exh. P.) Requena found Salcedo to be a credible witness. (Requena Dep. at 39.) However, because Cilindrello was unable to corroborate the details of Salcedo's complaint, he determined that Salcedo's

5

complaint was unsubstantiated. (Id. at 42, 50.)

Barbara Shea, the director of JetBlue's People Department, stated in her deposition that the purpose of the Corporate Security Department's investigation had been to determine whether Duviella had assaulted Salcedo. After Corporate Security determined that Salcedo's complaint was more accurately characterized as a sexual harassment accusation, not an assault accusation, it turned the investigation of her complaint over to the People Department. (Shea Deposition ("Shea Dep.") at 26, 37.) Shea then assigned Julia Gomez, a manager in the People Department, to investigate Salcedo's complaint. (Id. at 32).

Gomez conducted her entire investigation by telephone and did not become aware of Duviella's age or race until after he filed his lawsuit. (Gomez Deposition ("Gomez Dep.") at 42, 93; Declaration of Julia Gomez (Docket Entry # 41) ¶ 3.) Gomez reviewed the contents of Duviella's investigation file that she received from Corporate Security and interviewed Cilindrello, Rodriguez, Salcedo, and Cato. (Id. ¶ 4; Gomez Dep. at 41, 49, 54.) After her investigation was complete, Gomez recommended to Shea that Duviella be dismissed. (Id. at 81.) Shea agreed with Gomez's recommendation, as did Lopez. (Shea Dep. at 56.)

Duviella's employment with JetBlue was terminated effective November 24, 2003. Gomez informed Duviella in a letter dated December 1, 2003 that:

> After a thorough investigation, JetBlue has found that you improperly touched a female crew member and restrained her, with force, during the incident. During this investigation JetBlue also found that you made sexually charged comments to female crew members. This conduct violates JetBlue's Values and JetBlue's policy prohibiting discrimination and harassment, including sexual harassment, in the workplace.

(Rey-Cone Decl. Exh. B.)

6

The evidence JetBlue has presented of its investigation of Duviella is sufficient to meet JetBlue's burden to produce a legitimate and non-discriminatory reason for disharging Duviella. See Silverman v. City of New York, 216 F. Supp. 2d 108, 119 (E.D.N.Y. 2002) (holding that a belief that employee sexually harassed another employee is a legitimate reason for discharge). The burden therefore shifts back to Duviella to show by admissible evidence that JetBlue's stated reason for discharging him is a pretext for discrimination.

C. Duviella's Evidence of Pretext

Duviella argues that JetBlue's stated reason for discharging him is pretextual, first, because its investigation was biased and incompetent and, second, because the level of scrutiny JetBlue applied to Duviella's conduct, and the punishment JetBlue meted out to him, were harsher than those applied to a Caucasian employee named "Petrit." (Pl. Mem. at 2.) Duviella argues, therefore, that the investigation was in reality a sham, meant to cover up JetBlue's desire to discharge him because of his race and/or his age.

1. *Evidence that JetBlue's investigation was shoddy*

Duviella presents evidence that demonstrates that Gomez's investigation of the complaints against him was not thorough and that her conclusions and recommendation to dismiss him were not very well substantiated. For example, Gomez did not carefully read Requena's report, which concluded that Salcedo's complaint was unsubstantiated. (Gomez Dep. at 32.) In addition, Duviella argues that Gomez ignored or gave insufficient weight to evidence showing that he did not act inappropriately. Rodriguez told Gomez, for example, that she thought Duviella was only joking when he acted as if he were going to expose himself. (Id. at 44.) In addition, Gomez was aware that Cilindrello was unable to corroborate many of the details

7

of Salcedo's allegations against Duviella. (Id. at 49-50.)

Gomez also did not aggressively investigate Duviella's side of the story, specifically, his belief that Salcedo made up her complaint against Duviella because her boyfriend had seen her with Duviella and Salcedo therefore wanted to deflect his suspicions, and that Rodriguez and Cato, who were friends with Salcedo, helped her to concoct her story. (Id. at 60, 83.) Gomez also did not aggressively investigate Duviella's claims that Salcedo had herself engaged in inappropriate behavior at JetBlue, showing off scantily clad pictures of herself to other crew members. (Id. at 53.)

### 2. *Evidence of procedural irregularity*

According to Salman Khan, who was at one point Duviella's direct supervisor, sexual harassment or assault complaints against crew members at JetBlue were normally handled by supervisors, with the help, if necessary, of those supervisors' supervisors. (Khan Deposition ("Khan Dep.") at 38, 48-49). Khan stated that the People or Corporate Security Departments would not normally get involved in sexual harassment complaints. (Id. at 49.) Khan stated that this was the procedure used when a complaint of sexual harassment against a white crew member named "Petrit" was investigated. (Id. at 51-54.)

Duviella argues that the fact that JetBlue followed a different procedure while investigating him than it did while investigating Petrit shows that the investigation was merely a pretext used by JetBlue to justify his termination.

### 3. *Evidence Duviella was disciplined unusually harshly*

Duviella presents evidence that terminating him may have been a disproportionate response to Salcedo's complaint. Requena, for instance, did not know of a single instance in

8

which a JetBlue employee was terminated as a result of an investigation in which he found complaints against the employee to be unsubstantiated. (Requena Dep. at 58.) In addition, Petrit, who was also the subject of a sexual harassment complaint, apparently for touching a crew member's back while talking to her, was not terminated as a result of that complaint. (Khan Dep. at 51, 54).

Duviella also presents evidence that JetBlue normally used a system of progressive guidance, a system where violations of company policy were disciplined with an escalating series of sanctions. (Gomez Dep. at 21.) Gomez also stated, however, that progressive guidance would not be used in a situation, like Duviella's, where the problem was so severe that the People Department did not think it could change an employee's behavior. (Id. at 75.)

D. Duviella's Ultimate Burden to Show that His Discharge was Motivated by Discrimination

To prevail in an employment discrimination case, the plaintiff must prove "not only that the proferred nondiscriminatory reason was pretextual but also that the defendant discriminated against the plaintiff." Slattery, 248 F.3d at 91. The plaintiff must present sufficient evidence for a reasonable factfinder to infer that the real reason the plaintiff was fired was discrimination. Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 110 (2d Cir. 2001); James v. New York Racing Ass'n, 233 F.3d 149, 151 (2d Cir. 2000).

In a discrimination case, the truth of allegations made by an employer against a plaintiff is immaterial, for the ultimate issue is what motivated the employer. "The factual validity of the underlying imputation against the employee is not at issue." McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006). Moreover, there is no requirement that an employer

prove its allegations against an employee beyond a reasonable doubt, see Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006), or that it rely only on evidence that would be admissible in a court of law, see McPherson, 457 F.3d at 216 n.7. However, "arbitrary procedures may be employed to cover illegal discrimination." Therefore, a showing that an employer used "bizarre or duplicitous processes might strengthen a plaintiff's showing of pretext." Id.

No reasonable factfinder could infer from Duviella's evidence regarding the conduct of JetBlue's investigation that JetBlue was motivated by discrimination in discharging him. Even giving Duviella the benefit of all favorable inferences, Gomez's decision to believe Salcedo's account of Duviella's behavior, despite Duviella's denials and Cilindrello's inability to corroborate much of Salcedo's story, was a reasonable credibility determination. Gomez's failure to investigate Duviella's claim that Cato, Rodriguez, and Salcedo conspired against him was also reasonable in light of the fanciful nature of Duviella's conspiracy theory. Moreover, Gomez reasonably concluded that Duviella acted inappropriately when he put his hand down his pants in front of Rodriguez, even if he had in fact been joking and would never have actually exposed himself.

Likewise, Duviella's evidence of selective enforcement, that "Petrit," a white employee of JetBlue, was disciplined less harshly for similar conduct and that the investigation of Petrit was never referred to Corporate Security or to the People Department, does not support an inference of pretext. Conclusory assertions and assertions not based on personal knowledge, like Duviella's allegations regarding Petrit, are insufficient to create a genuine issue of material fact so as to defeat a motion for summary judgment. Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004); see Henry v. Daytop Vill., Inc., 42 F.3d 89, 97 (2d Cir. 1994). In any

10

event, to show that he was treated differently from similarly situated employees without his protected characteristics, Duviella must show that those employees were similarly situated in all material respects. Shumway v. United Parcel Serv. Inc., 118 F.3d 60, 64 (2d Cir. 1997). Duviella has not presented sufficient evidence of what exactly Petrit was accused of, or of how the investigation of Petrit's conduct proceeded, to show that he and Petrit were similarly situated in all material respects. In fact, the little evidence that is in the record suggests that Petrit's conduct was significantly less serious than that of which Duviella was accused, for Khan, Duviella's former supervisor, suggested only that a fellow employee complained that Petrit had touched her back when he spoke to her. JetBlue's treatment of Petrit's misconduct, even if it could be considered by the court, would therefore not be sufficient to show that JetBlue selectively enforced its policies against sexual harassment.

Duviella has therefore failed to present evidence sufficient for a reasonable factfinder to conclude that JetBlue's stated reason for discharging him was pretextual. In any case, even if the evidence presented by Duviella were sufficient to establish pretext, Duviella has presented insufficient evidence for a reasonable factfinder to conclude that JetBlue was "actually motivated, in whole or in part, by discrimination" on the basis of age or race. See Grady, 130 F.3d at 561. Duviella has not pointed to any statements by anybody at JetBlue related to his age or race. In addition, he has failed to rebut Gomez's statements that she was unaware of his age or race while she investigated Salcedo's complaint. Likewise, he has presented no admissible evidence that JetBlue treated him differently from any employee of a different race. Duviella therefore cannot meet his ultimate burden as to his termination claim. See Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000). JetBlue's motion for summary judgment as to

Duviella's termination claims is therefore GRANTED.

## III. Duviella's Failure-to-Promote Claims

To establish a *prima facie* case based on an alleged discriminatory failure to promote, Duviella must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for a job for which the employer was seeking applicants; (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications. Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998). Once the plaintiff establishes a *prima facie* case, the McDonnell Douglas burden-shifting analysis proceeds as described above. See Chavez v. Iberia Foods Group, No. 05-CV-2464 (NG) (RER), 2007 WL 1959028, at *5 (E.D.N.Y. June 29, 2007).

Duviella claims that JetBlue discriminatorily failed to promote him on three separate occasions – in June 2003, in August 2003, and in October 2003. The court will consider each separately.

### A. Duviella's June 2003 Application

On June 26, 2003, Duviella filed an application for an Inflight Supervisor position at JetBlue. (Duviella Application, Rey-Cone Decl. Exh. B.) On June 28, 2003, Khan, Duviella's supervisor, filled out a transfer approval form for Duviella, on which he stated "[i]n my professional opinion, Danny is ready for more responsibility and challenge in his profession[.] I feel confident Danny will be a good in-flight [s]upervisor." (Id.)

Laura Konopka, a recruiter in the People Department, whom Duviella admits was the decisionmaker with respect to his application to be an Inflight Supervisor (Plaintiff's Affidavit ("Duviella Aff.") (Docket Entry # 47) ¶ 7), interviewed Duviella for the Inflight Supervisor

12

position on July 7, 2003, (Declaration of Laura Konopka ("Konopka Aff.") (Docket Entry # 43) ¶ 2). Konopka attests in her affidavit that she did not forward Duviella's application to Valerie Jenkins, the ultimate decisionmaker with respect to Inflight Supervisor positions, because he "had no Inflight experience and no supervisory experience" at JetBlue. (Konopka Aff. ¶ 3-4.) Duviella attests that a few weeks after he applied for this position, he learned that JetBlue had awarded Inflight Supervisor positions to two Caucasian flight attendants under the age of thirty. (Duviella Aff. ¶ 7.)

JetBlue argues that, even assuming that Duviella has made out a *prima facie* case that JetBlue discriminatorily failed to promote him, he cannot show that its determination that he was not the most qualified candidate for the position was pretextual.

Duviella argues, however, that he did not completely lack supervisory experience at JetBlue and that he was, contrary to Konopka's attestation, qualified for the Inflight Supervisor position. Duviella's last position at JetBlue was as a customer service lead. Both Cilindrello and Khan stated at their depositions that customer service leads have supervisory responsibilities. (Cilindrello Dep. at 24-25; Khan Dep. at 16.) On the other hand, the undisputed evidence in the record demonstrates that these supervisory responsibilities are limited; although customer service leads have "the ability to lead their group to make sure that the operation was running," they cannot discipline their employees for infractions. Instead, they must report those infractions to their supervisors. (Lopez Dep. at 29.) In any case, because Konopka stated that Duviella completely lacked supervisory experience, whereas the facts, viewed in the light most favorable to Duviella, demonstrate that he had limited supervisory experience, a jury could find that Konopka's stated reason for denying him further consideration for the Inflight Supervisor

13

position was pretextual.

Duviella's failure-to-promote claim based on his June 26, 2003 application must nevertheless fail, however, because Duviella has failed to put forth any evidence that Konopka was actually motivated by discrimination when she denied him further consideration for an Inflight Supervisor position. Indeed, Duviella has himself stated that he has "no facts" showing that Konopka was motivated by discrimination. (Duviella Dep. at 73.) Although it is possible to survive a motion for summary judgment with only a *prima facie* case plus a showing that an employer's proferred reason is false, the employee must meet the ultimate burden of presenting evidence that the employer intentionally discriminated against him. James, 233 F.3d at 156-57. Here, Duviella has presented no evidence that Konopka considered his age or race when she decided not to consider him for the Inflight Supervisor position. Moreover, given the undisputed fact that he only had limited supervisory experience at JetBlue, Duviella has only succeeded in casting a sliver of doubt on her stated rationale for denying him further consideration, not in rendering that rationale wholly implausible. Cf Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 110 (2d Cir. 2001) (in a case where a candidate showed the implausibility of an employer's stated rationale for denying a candidate a job, but not more, a showing of spoilation of evidence by the employer could "push a claim that might not otherwise survive summary judgment over the line"). Because of the lack of evidence of discriminatory motivation in the record, the court grants JetBlue's motion for summary judgment on Duviella's failure-to-promote claim based on his June 2003 application.

B. Duviella's August 2003 Application

Duviella states in his affidavit that he learned in August 2003 that four Inflight Supervisor

14

positions were available. He approached Khan and told him of his interest in the position. Khan told Duviella that he would not write him the required recommendation letter because the positions were being abolished. Duviella later learned that Khan had misinformed him and that the positions were given to four Caucasian individuals under the age of forty. (Duviella Aff. ¶ 8-9.) Duviella claims that Khan was motivated by discriminatory animus when he lied to Duviella and that Khan's lie denied him the opportunity to apply for an Inflight Supervisor position. (Pl. Mem. at 15.)

JetBlue claims that Duviella cannot make out a *prima facie* case of discrimination because he never formally applied for the position at issue. Under Petrosino v. Bell Atlantic, 385 F.3d 210, 227 (2d Cir. 2004), the application requirement of a plaintiff's *prima facie* case may not be satisfied "merely with evidence that a plaintiff generally requested promotion consideration." If a plaintiff has not formally applied for a promotion, he is foreclosed from later filing suit based on a denial of that promotion unless he can "demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." Id.

The court believes that Duviella has satisfied the application requirement under Petrosino. JetBlue concedes that the first step for Duviella in applying for an Inflight Supervisor position was to obtain a recommendation letter from Khan. (Lopez Dep. at 45.) Because Duviella took the first step required by JetBlue to apply for his desired promotion, and because he was subsequently prevented by Khan from proceeding, he should not be precluded from proceeding with his failure-to-promote claim because of his failure to apply formally for the position. Since

Duviella could not formally apply for the promotion he desired without the recommendation letter from Shah, it would be unreasonable to prevent him from suing JetBlue for failure-to-promote because of his failure to do the impossible.

Nonetheless, Duviella's claim must fail. First, there is no evidence in the record, besides Duviella's unsupported assertions, see Patterson, 375 F.3d at 219, that Khan lied to him. Second, Duviella cannot put forth any evidence that, even assuming Khan did lie to him, the lie was motivated by discriminatory animus. Only two months earlier, when Duviella applied for an in-flight supervisory position on June 26, 2003, Khan wrote a positive recommendation letter for Duviella, stating, "I feel confident Danny will be a good in-flight Supervisor." (Duviella Application, Rey-Cone Decl. Exh. B.) Under these circumstances, it is difficult to infer that Khan acted with discriminatory animus because it is highly probative of a lack of discriminatory animus that the same person who is now alleged to have acted discriminatorily acted favorably towards Duviella in the past. See Grady, 130 F.3d at 560 ("For example, when the person who made the decision to fire was the same person who make the decision to hire, it is difficult to impute to her an insidious motivation that would be inconsistent with the motivate to hire"); Schnabel, 232 F.3d at 91 (finding "highly relevant" for a finding of lack of discrimination that the same person who hired later fired). Because Duviella has failed to present evidence that might permit a rational jury to infer that he was discriminatorily denied the promotion he requested in August 2003, this claim must also fail.

    C.    <u>Duviella's October 2003 Interview</u>

In September 2003, Duviella learned of another opening for an Inflight Supervisor position. He applied for the position and was scheduled for an interview in October 2003. The

interview never took place because Duviella was suspended due to Salcedo's complaint of sexual harassment. (Duviella Aff. ¶¶ 11-12.)

JetBlue must also be granted summary judgment on this final failure-to-promote claim. JetBlue clearly had a legitimate reason for denying Duviella the interview it had previously scheduled — Salcedo's complaint against him — and, as described above, Duviella has not demonstrated that there is a genuine issue of material fact with respect to whether his suspension and his discharge were motivated by discrimination. See supra text at 9-12. Duviella has therefore failed to show that there is a genuine issue of material fact with respect to whether the cancellation of his October 2003 interview was motivated by discrimination.

**IV.  Conclusion**

For the reasons stated above, JetBlue's motion for summary judgment is GRANTED in its entirety. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated:  May 6, 2008                                          /s Nicholas G. Garaufis
        Brooklyn, N.Y.                                       NICHOLAS G. GARAUFIS
                                                             United States District Judge